IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

FILED
2:48 pm, 3/16/11
Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| PATRICK DANIEL MARTINEZ and ) | Case No. 09-21124 |
| SARAH MARIE MARTINEZ, ) | Chapter 7 |
| ) | |
| Debtors. ) | |

**MEMORANDUM OPINION GRANTING OCWEN LOAN SERVICING'S MOTION FOR RELIEF FROM AUTOMATIC STAY.**

On September 27, 2010, this matter came before the Court on an evidentiary hearing on the Ocwen Loan Servicing's Motion for Relief from Automatic Stay ("Motion") and the objection filed by the Debtors. Patrick and Sarah Martinez ("Debtors") were represented by Stephen Winship and Brad Hunsicker. Ocwen Loan Servicing, LLC, ("Ocwen") was represented by Patricia Michitsch. At the conclusion of the evidentiary hearing, the Court entered its Order after Hearing Regarding Exhibits ordering Ocwen to submit to the court and the Debtors supplemental exhibits. On November 10, 2010, the Court held a subsequent hearing by video conference on the Debtors' objections to the supplemental exhibits. On November 23, 2010, the Court entered the Amended Order Admitting Exhibits.

The Court having reviewed the file, arguments of the parties, testimony and exhibits, and based upon the following, grants the motion.

**Jurisdiction**

This court has jurisdiction of this matter under 28 U.S.C. §§1334 and 157(b)(2)(G). The motion was brought under 11 U.S.C. § 362(d).[1]

**Background**

Debtors purchased property located at 130 Honeysuckle, Casper, Wyoming and executed a promissory note ("Note") in favor of the lender, Taylor, Bean & Whitaker Mortgage Corp. ("Taylor"). The Note secured by a mortgage ("Mortgage") was guaranteed by the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The Mortgage was recorded in the Office of the Clerk of Natrona County, Document Number 824414 with Mortgage Electronic Registration Systems, Inc. ("MERS") designated as the Mortgagee, "acting solely as a nominee for Lender and Lender's successors and assigns." The Mortgage states, as relevant:

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to releasing and canceling this Security Instrument."

Additionally, it contains the following language:

TRANSFER OF RIGHTS IN THE PROPERTY

---

[1] Unless otherwise indicated, all chapter, section and rule reference are to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Page 2

"This Security Instrument secures to Lender: (the repayment of the Loan, and all renewals, extensions and modification of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property located in the County of Natrona."

The Mortgage also describes the protection of "Lender's Interest in the Property and Rights Under this Security Instrument," as stated below.

"If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or right under this Security Instrument *(such as a proceeding in bankruptcy)*[2], Probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and the rights under this Security Instrument, whatever is reasonable or appropriate to protect Lender's interest in the Property and right under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and rights under this Security Instrument, *including its secured position in a bankruptcy proceeding...*"[3]

Debtors defaulted on the note as of April 2009.  The Debtors stipulated that they were in default prior to filing their bankruptcy petition and have not made any mortgage

---

[2] Emphasis added.

[3] Emphasis added.

payments or payments toward the then existing arrears since they filed for Bankruptcy protection. Debtors also stipulated that there is not any equity in the property.

On Ocwen's information and belief, upon the Debtors' default on the note, Freddie Mac took control of the Note. On or about August 10, 2009, Freddie Mac entered into an Interim Servicing Master Agreement ("Servicing Agreement") with Ocwen, whereas on August 13, 2009, Ocwen became responsible for servicing the loan. The Servicing Agreement provides that Freddie Mac owns mortgage loans and subsequently contracts with servicers to service those loans on its behalf. Ocwen is such a servicer under contract with Freddie Mac through the Servicing Agreement.

Freddie Mac also entered into the Custodial Agreement (Interim Servicing): Single Family Mortgages ("Custodial Agreement") with Branch Banking & Trust Company ("Branch Bank") on or about August 14, 2009. The Custodial Agreement states that Freddie Mac assumed servicing for certain Mortgages that it owned and contracted with Ocwen Loan Serving, LLC to provide subservicing. By the terms of the Custodial Agreement, Branch Banking maintains the custody and control of the loan documents on behalf of Freddie Mac.[4]

In addition to the Servicing Agreement and Custodial Agreement establishing the relationship between the parties, the Freddie Mac Single-Family Seller/Servicer Guide/Single- Family Seller/Service Guide, Volume 1 and Glossary ("Guide") provides

---

[4] Freddie Mac Single Family Seller/Servicer Guide §18.6.

the procedures, authority and responsibilities of the servicer and custodian to Freddie Mac.

An Assignment of Mortgage ("Assignment") was entered into on August 13, 2009, and recorded on September 25, 2009 as Document Number 875959, in the Office of the Clerk of Natrona County, Wyoming, whereas MERS "...its successors and assigns, as nominee for Taylor, its successors and assigns..." assigned to Ocwen "all its rights, title, and interest in and to the real property described in the mortgage...together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due there..."

Taylor filed a Chapter 11 bankruptcy on August 24, 2009 in the Bankruptcy Court for the Middle District of Florida (Case No. 09-07047).

Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 4, 2009 including in the bankruptcy estate the real property that is the subject of this motion for relief from stay. On April 21, 2010, Ocwen filed its Motion for Order Granting Relief from Automatic Stay ("Motion") in order to foreclose its security interest in the property and the Debtors objected.

**Issue**

The Debtors assert a multitude of issues including: whether the endorsement of the note was proper; when the endorsement on the note took place, when the note was delivered to Ocwen; whether "MERS" had any rights or authority regarding the mortgage and its assignment; Freddie Mac's position with regard to the note and mortgage; and

Ocwen's relationship and authority to pursue foreclosure on behalf of Freddie Mac. The driving argument underlying all of the Debtors' claims is whether Ocwen is a party in interest with standing to request relief from the automatic stay.

**Discussion**

A motion for relief from the automatic stay must satisfy both substantive and procedural requirements. The substantive requirements are provided by §362(d). The procedural requirements are imposed by the United States Constitution (due process) and the Federal Rules of Bankruptcy Procedure.[5] The applicable rule here is the "real party in interest" rule. The Bankruptcy Code states,

> "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditionally such stay —
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section if —
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization..."[6]

This issue has been before the Court in previous cases,[7] but the law bears repeating,

---

[5] *In re Hwang*, 393 B.R. 701 (Bankr. C.D. Cal., 2008); Fed. R. Bankr. P. 7017.

[6] §362(d).

[7] *In re Relka*, Case No. 09-20806, 2009 Bankr. LEXIS 4144, (Bankr. D.Wyo. Dec. 18, 2009); *In re Trierweiler*, Case No. 10-20499, (Bankr. D. Wyo., Aug. 23, 2010); *In re Erickson*, Case No. 10-20745 (Bankr. D. Wyo., Dec. 6, 2010) (citing *MERS, Inc.v. Chong*, No. 09-661 (D. Nev. 2009) *In re Jacobson*, 402 B.R. 359 ( Bankr. W.D. Wash. 2009).

"Before the court can address the issue of relief from stay, it must first determine if the creditor has standing to bring the motion. A motion for relief from the automatic stay is a contested matter. An action must be prosecuted in the name of the real party in interest."[8]

In the context of a motion for relief from stay, the movant bears the burden of proving it is a real party in interest.[9] To have standing to seek relief from the automatic stay, [movant] was required to establish that it is a party in interest and that its rights are not those of another entity.[10]

Since a party that seeks relief under §362(d) does so in order to enforce rights that have been stayed by §362(a), it is necessary to consider who is entitled to enforce the note under the substantive law that governs those rights. The Court must look to the substantive law that governs promissory notes. Generally, bankruptcy law does not provide for the enforcement of promissory notes. In the absence of bankruptcy law, the legal obligations of the parties are determined by the applicable non-bankruptcy law, which is usually state law.

Under general mortgage law, the long standing premise is that the mortgage follows the note. "All the authorities agree that the debt is the principal thing and the mortgage an accessory."[11] Additionally, when the ownership of a mortgage is assigned to

---

[8] *Relka* at 5.

[9] *In re Willhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) citing *In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008).

[10] *MERS v. Chong* at 5.

[11] *Carpenter v. Longan*, 83 U.S. 271 (1872).

another, the obligation secured by the mortgage is likewise transferred unless the parties agree that the obligation is to be retained by the transferor. This is ordinarily what the parties desire and expect when a mortgage is assigned.[12]

Under Wyoming law, a negotiable instrument is:

> "an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise, if it :
> (i) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (ii) Is payable on demand or at a definite time; and
> (iii) Does not state any other undertaking or instruction by the person promising to do any act in addition to the payment of money.
> (b) An "instrument" means a negotiable instrument."
> (e) An instrument is a "note" if it is a promise..."[13]

A person entitled to enforce an instrument, is

> "(1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; or, (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 34.1-3-309 or 34.1-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."[14]

Wyoming law also states that if an indorsement is made by the holder of the instrument and it is not a special indorsement, it is a "blank indorsement." An instrument that is indorsed in blank becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.[15]

---

[12] Restatement (Second) of Mortgages §5.4 (1997).

[13] Wyo. Stat §34.1-3-104 (2009).

[14] Wyo. Stat. § 34.1-3-301 (2009).

[15] Wyo. Stat. §34.1-3-205 (2009).

Additionally, transfers of instruments and the rights acquired by such a transfer are provided for under Wyoming law, that states:

(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.[16]

It is uncontested that the Note in this case, is a negotiable instrument under Wyoming law. It is an "unconditional promise to pay a fixed amount of money." At the time that it was signed, it was payable to Taylor. Taylor transferred the Note to Freddie Mac, giving Freddie Mac the right to enforce the Note. Freddie Mac then entered into into agreements to provide for the servicing of the loan and custody of the documents. The actual documents were placed in the physical custody of Branch Bank, who by terms of the agreement and the Guide, have custody of the documents on behalf of Freddie Mac. Ms. Johnson testified that the Note and Mortgage were retrieved from Branch Bank to bring to the hearing. Her testimony and the court's inspection of the note shows it to be endorsed in blank. Therefore the Note is negotiable to the bearer.

Debtors asserted that since Ms. Johnson had the Note, endorsed in blank, that she was the bearer and could negotiate the note. However, this argument is not persuasive.

---

[16] Wyo. Stat. § 34.1-3-203 (2009). The right to enforce an instrument and ownership of the instrument are two different concepts. Official Comments to § 34.1-3-203 (2009).

Ms. Johnson is an employee of Ocwen. Ocwen has an agreement with Freddie Mac to service the Note. Ocwen also signed the custodial agreement between Freddie Mac and Branch Bank, who is the custodian of the documents. Ms. Johnson was at the hearing to testify on behalf of her employer, Ocwen, who has an agreement with Freddie Mac to service the loan. The Note was endorsed in blank and transferred to Ocwen, who under the terms of the agreement pursue the foreclosure right on behalf of Freddie Mac. Ocwen was fulfilling its obligations under the Servicer Agreement and Guide in bringing the Note and Mortgage to the hearing in support of the request for relief from stay. Additionally, the Wyoming Statutes state that the transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument." MERS, as nominee for Taylor, transferred the Mortgage by Assignment to Ocwen. Ocwen, by Agreement with Freddie Mac, serviced the loan documents, that were in the possession of Branch Bank, also by agreement with Freddie Mac. Ocwen had the authority to enforce the instrument on behalf of Freddie Mac. The court finds that Ocwen has authority from Freddie Mac to pursue the foreclosure action on Freddie Mac's behalf.

MERS AUTHORITY

Debtors argue that MERS did not have the authority to make the Assignment from Taylor to Ocwen or alternately, that MERS only could assign the rights that it had, and MERS had no rights. However, the Mortgage, which the Debtors signed, expressly gives MERS the authority to "to take any action required of Lender, including, but not limited to releasing and canceling this Security Instrument." It is possible for a mortgagee to

assign the mortgage while retaining full ownership of the obligation, if the parties agree.[17] The United States District Courts for the District of Utah and Massachusetts have found that MERS has authority to "take any action" required of Lender."[18] This court finds this position persuasive in light of the applicability of fundamental mortgage law and the Debtors agreeing to and grantingMERS the authority, as provided in the Mortgage. The court finds that MERS had authority to assign the mortgage on behalf of Taylor, and as provided in the Mortgage, to "take any action required of Lender."

Based upon the above, the court finds that Ocwen is a party in interest to bring the motion for relief from stay.

The court's substantive analysis is based upon the Debtors' stipulations that they are in default on the loan payments and there is no equity in the property. The property is not necessary for an effective reorganization, as this is a chapter 7 liquidation bankruptcy case and an effective reorganization position is not applicable.

Therefore the court finds that Ocwen has met its burden in showing that it is a party in interest with standing to bring this motion; that the Debtors are in substantial default; there is no equity in the property; and, the property is not necessary for an effective reorganization. The motion for relief shall be granted.

---

[17] Restatement (Second) of Mortgages §5.4 (1997).

[18] *Marty v. Mortgage Electronic Registration Systems*, (Case No. 1:10-cv 00033-CW, 2010 U.S.Dist. LEXIS 111209 (D.C. UT, October 19, 2010); *Burnett v Mortgage Electronic Registration Systems, Inc.*, Case No. 1:09 CV 00069DAK, 2009 U.S.Dist LEXIS 100409 (D.C. UT, October 27, 2009); *Harris v HSBC Bank USA*, C.A. No. 09-cv-30215-MAP, 2010 U.S. Dist. LEXIS 102726 (D.C. Mass, Sept. 28, 2010).

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 16 day of March, 2011.

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Steve Winship
    Brad Hunsicker
    Patricia Michitsch